# United States Court of Appeals

## For the Eighth Circuit

_____

No. 17-1143

_____

In re: Evette Nicole Reed

*Debtor*

------------------------------

Critique Services, LLC

Ross Harry Briggs

*Appellant*

v.

Evette Nicole Reed

Seth A. Albin

*Trustee*

Honorable Charles E. Rendlen, III

*Interested party - Appellee*

United States Bankruptcy Court

*Interested party*

_____

No. 18-1169

_____

In re: Ross H. Briggs

*Petitioner*

_____

Appeals from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: January 9, 2018
Filed: April 25, 2018

_____

Before WOLLMAN, COLLOTON, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

The bankruptcy court[1] sanctioned Ross H. Briggs for contempt of an order and for misleading the court. The district court[2] affirmed. Having jurisdiction under 28 U.S.C. §§ 158(d)(1) and 1291, this court affirms.

I.

Critique Services LLC was a bankruptcy-services business run by Beverly Holmes Diltz. Working with Critique were attorneys Briggs and James C. Robinson. In June 2014, the bankruptcy court suspended Robinson from practicing in the United

_____

[1] The Honorable Charles E. Rendlen, III, United States Bankruptcy Judge for the Eastern District of Missouri.

[2] The Honorable Ronnie L. White, United States District Judge for the Eastern District of Missouri.

-2-

States Bankruptcy Court for the Eastern District of Missouri. This court affirmed. ***Robinson v. Steward (In re Steward)***, 828 F.3d 672 (8th Cir. 2016).

Briggs agreed to represent about 100 of Robinson's clients who had bankruptcy cases pending in the Eastern District. In late 2014, the bankruptcy court ordered Robinson to show cause why it should not order disgorgement of his attorney's fees in some of those cases. The bankruptcy court also ordered the trustees in these cases to provide the court with specific information about the fees.

To comply with the order, the trustees sent a letter to Critique, Robinson, and Briggs asking for documents and information. Briggs responded: "all of my legal services rendered on behalf of the debtors in question were afforded free of charge and no fee was paid to or shared with me in these cases. Accordingly, there are no checks, ledgers or account statements that relate to such non-existent fees." He added: "I . . . do not possess any document of [Critique]" or "any documents which are encompassed within [the trustees'] request to Mr. Robinson."

The trustees moved to compel Critique, Robinson, and Briggs to turn over the requested documents and information. On January 13, 2015, the bankruptcy court held a hearing on the motion. Arguing about the motion, Briggs discussed his relationship with Critique and Diltz, eventually agreeing to help obtain the documents and information. On January 23, the bankruptcy court ordered Critique, Robinson, and Briggs to turn over to the trustees specific fee-related documents and information. The bankruptcy court noted that to comply with the order, Briggs might need to seek the documents and information from third parties or "mak[e] inquiries" with Critique or Robinson.

On July 6, the bankruptcy court issued an order finding that Critique, Robinson, and Briggs "had failed to comply with the Order Compelling Turnover." The bankruptcy court explained that it was "considering the imposition of monetary

-3-

sanctions and/or nonmonetary sanctions or the taking of any other appropriate action for non-compliance." The order gave Critique, Robinson, and Briggs seven days to either comply with the order compelling turnover or file a brief addressing why sanctions should not be imposed. Briggs filed a brief opposing sanctions. On July 22, the bankruptcy court ordered Briggs to show cause why he should not be sanctioned. Briggs responded by questioning the bankruptcy court's authority, also arguing that sanctions were not warranted.

On April 20, 2016, the bankruptcy court sanctioned Briggs. It reviewed at length the disciplinary records of several people associated with Critique, including Briggs. *See **Briggs. v. Labarge (In re Phillips)**, 433 F.3d 1068, 1071 (8th Cir. 2006) (holding Briggs violated Fed. R. Bankr. P. 9011, but vacating sanctions); **In re Wigfall**, No. 02-32059, slip op. at 2 (Bankr. S.D. Ill. August 15, 2002) (suspending Briggs "from filing any new cases in the United States Bankruptcy Court for the Southern District of Illinois for a period of three (3) months.") It found "Briggs to be in contempt of the Order Compelling Turnover," and that he "deliberately and with deceptive intent made misleading representations to the Court regarding the true nature of his relationship with the Critique Services Business and Diltz." With some exceptions, the order banned Briggs for six months from representing new bankruptcy clients, practicing before U.S. Bankruptcy Court for the Eastern District of Missouri, and using that court's electronic-filing system. It also required him to take 12 hours of continuing legal education in professional ethics, and permanently prohibited him "from being financially or professionally involved with or connected to, whether formally or informally or otherwise," Critique, Diltz, Robinson, and other individuals and entities affiliated with Critique.

Briggs appeals. While the appeal was pending, Briggs requested reinstatement to practice before the United States Bankruptcy Court for the Eastern District of Missouri. He directed his request first to the chief bankruptcy judge, then to the chief

-4-

district judge.  Both ruled that Briggs's request was improper.  Briggs also appeals the chief district judge's judgment.

II.

Briggs says that as an Article I court, the bankruptcy court did not have constitutional authority to sanction him under these circumstances.  This is a legal issue that this court reviews de novo.  *See **Walton v. LaBarge (In re Clark)***, 223 F.3d 859, 862, 864 (8th Cir. 2000).

Briggs focuses on *Stern v. Marshall*, 564 U.S. 462 (2011).  There, the bankruptcy court, in an adversary proceeding, entered summary judgment on a counterclaim for tortious interference.  ***Stern***, 564 U.S. at 470-71.  The Court explained that the bankruptcy court had statutory authority to enter final judgment on the counterclaim under 28 U.S.C. § 157(b)(2)(C).  ***Id.*** at 482.  As to statute's constitutionality, the Court said:  "When a suit is made of 'the stuff of the traditional actions at common law tried by the courts at Westminster in 1789,' and is brought within the bounds of federal jurisdiction, the responsibility for deciding that suit rests with Article III judges in Article III courts."  ***Id.*** at 484, *quoting **Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.***, 458 U.S. 50, 90 (1982) (Rehnquist, J., concurring in judgment).

The *Stern* counterclaim met that standard—and could only be heard by an Article III court—because it involved "the most prototypical exercise of judicial power:  the entry of a final, binding judgment *by a court* with broad substantive jurisdiction, on *a common law cause of action*, when the action *neither derives from nor depends upon any agency regulatory regime*."  ***Id.*** at 494 (emphasis added on last two phrases).  Even if a counterclaim is statutorily authorized, "Congress may not bypass Article III simply because a proceeding may have *some* bearing on a bankruptcy case; the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process."

-5-

*Id.* at 499. The Court concluded that the bankruptcy court "lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." *Id.* at 503.

Briggs tries to equate the sanctions order with the counterclaim in *Stern*. According to Briggs, the bankruptcy court here conducted only "a contempt action against a third-party in an attorney ethics investigation" that "implicate[d] only state law issues [under the Missouri Rules of Professional Responsibility] not encompassed in the claims allowance process" or "the restructuring of debtor-creditor relations."

This case does not involve an "attorney ethics investigation" or issues reserved for an Article III court. Under 28 U.S.C. § 157(a): "Each district court may provide that any or all cases under title 11 [bankruptcy] and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." The Eastern District of Missouri has implemented the full scope of § 157(a). **E.D.Mo. R. 81 - 9.01(B)**. By 28 U.S.C. § 157(b)(1): "Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title."

The show-cause orders issued in late 2014 addressed whether it was necessary to disgorge, under 11 U.S.C. § 329, Robinson's unearned attorney's fees for representing several clients in bankruptcies in the Eastern District. As for the order compelling turnover, the bankruptcy court entered it under 11 U.S.C. § 542(e) to help determine whether disgorgement was necessary. The bankruptcy court based the sanctions order on events that occurred while trying to enforce the show-cause orders to Robinson and the order compelling turnover. All the orders here are matters "arising in" a case under title 11. *See Stoe v. Flaherty*, 436 F.3d 209, 216 (3d Cir.

-6-

2006) ("The category of proceedings 'arising in' bankruptcy cases includes such things as administrative matters, orders to turn over property of the estate and determinations of the validity, extent, or priority of liens.") (citation and internal quotation marks omitted); *In re Williams*, 256 B.R. 885, 891 (B.A.P. 8th Cir. 2001) ("The phrase 'arising in' generally refers to administrative matters that, although not expressly created by title 11, would have no existence but for the fact that a bankruptcy case was filed.").

Even so, Briggs asserts that the orders are—like the *Stern* counterclaim—only statutorily, not constitutionally, authorized. But unlike the *Stern* counterclaim, the orders here "stem[] from the bankruptcy itself" and do not implicate a common-law claim. *See Stern*, 564 U.S. at 499. Nor do they implicate a fraudulent-conveyance claim like in *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989), which Briggs discusses. The *Stern* case "affect[s] only . . . one small part of the bankruptcy judges' authority." *In re AFY, Inc.*, 461 B.R. 541, 547 (B.A.P. 8th Cir. 2012); *see also Stern*, 564 U.S. at 502 ("the question presented here is a 'narrow' one.").

Here, the bankruptcy court had authority to enter sanctions for events that occurred while trying to enforce the order compelling turnover and the show-cause orders. *See Law v. Siegel*, 134 S. Ct. 1188, 1194 (2014) (bankruptcy courts "possess 'inherent power . . . to sanction abusive litigation practices.'"), *quoting Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 375-76 (2007); *Robinson*, 828 F.3d at 686 ("Bankruptcy courts have the authority to sanction persons appearing before them, and this authority includes the right to control admission to their bar.") (citations and internal quotation marks omitted).

III.

Briggs believes that "the record does not support the contempt finding of the bankruptcy court, because there is no evidence that Briggs . . . failed to comply with

-7-

the Turnover Order."  "A party commits contempt when he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order."  ***Hornbeck Offshore Servs., LLC v. Salazar***, 713 F.3d 787, 792 (5th Cir. 2013) (citation omitted).  A contempt finding requires "clear and convincing evidence."  ***Chicago Truck Drivers v. Board Labor Leasing***, 207 F.3d 500, 505 (8th Cir. 2000).  This court reviews contempt findings for abuse of discretion.  *See* ***id.*** at 504; ***Waste Mgmt. of Washington, Inc. v. Kattler***, 776 F.3d 336, 339 (5th Cir. 2015) ("We review contempt findings for abuse of discretion, but review is not perfunctory.  Facts will be accepted as true unless clearly erroneous, but questions of law concerning the contempt order are reviewed de novo.") (citation and internal quotation marks and footnotes omitted).

Briggs argues he had no access to the documents and information subject to the order compelling turnover.  He concludes he could not turn over anything and thus could not be held in contempt of the order.  This argument ignores that the order required Briggs to *seek* the documents and information from Critique, Robinson, and third parties:

> [I]t is proper to order that Briggs, in his capacity as counsel for certain of the Debtors, turn over all documents and information, as set forth in the turnover directive. . . . This directive may require him to seek documents and information from third parties—even if it places him in the (presumably) undesirable position of making inquiries to Robinson and Critique Services L.L.C.  If Briggs gets "stonewalled" . . . then he can file a credible and specific affidavit detailing his efforts.

The bankruptcy court did not, as Briggs suggests, hold him in contempt for failing to turn over documents and information.  It held him in contempt because he "made no real effort to obtain the information for his clients so that he could turn it over."  It explained:

-8-

Had Briggs made serious, sincere efforts to obtain the Request Information, but was unable to obtain the information because he was stonewalled, then that would be one thing.  Under those circumstances, Briggs would have made a good faith effort to comply with the Order Compelling Turnover.  He would have fulfilled his promise and he would not be in trouble with the Court.  However, those are not the circumstances here. . . .  His failure to turn over any responsive information is not due to the fact that he is not in possession of the documents; it is due to the fact that he took no actions that would allow him to comply with the turnover directive.

Briggs believes he did enough.  At oral argument in this court, he emphasized a lunch meeting with Diltz on January 13, and a letter he sent Robinson and Critique on January 24 (the day after the bankruptcy court entered the order compelling turnover).  The bankruptcy court found that the lunch meeting "did nothing to 'facilitate' compliance with the Court's directives."  In the letter, Briggs requested that Robinson and Critique "produce all documents encompassed within the above Order to the Trustees by January 30, 2015 at 12:00PM (Central) as required by the Order of the Court."  The bankruptcy court ruled that the letter did not satisfy Briggs's obligation under the order compelling turnover, noting "[t]he letter was devoid of any sense of sincere advocacy.  It was nothing more than another attempt by Briggs to *appear* to be doing something helpful, without *actually doing* something helpful."

The bankruptcy court also ruled that the letter was "followed by nothing else of any substance."  On February 4, the bankruptcy court held a status conference to establish that no one had turned over the documents and information.  On July 6, the bankruptcy court notified Critique, Robinson, and Briggs—all with disciplinary histories—that they had seven days to either comply with the order compelling turnover or file a brief addressing why sanctions should not be imposed.  Briggs filed a brief on July 13.  The brief did not detail any efforts to secure compliance from Critique and Robinson.  Rather, it focused on how neither Briggs nor his clients had

-9-

access to the documents and information.  In response to yet another show-cause order, Briggs filed a brief on July 31, mentioning the lunch meeting for the first time.

The order compelling turnover required Briggs to make "efforts" to obtain the documents and information for his clients.  But between sending the letter on January 24 and filing his brief on July 31, the record does not show that Briggs made any effort to seek compliance from Critique or Robinson—despite knowing they had not complied with the order.  Briggs never filed "a credible and specific affidavit detailing his efforts" to secure compliance from Critique and Robinson—an option in the order compelling turnover.

The bankruptcy court gave Briggs multiple opportunities to comply with the order compelling turnover, specifically outlining methods of compliance.  Briggs did not comply.  The bankruptcy court did not abuse its discretion in holding Briggs in contempt. *See **United States v. Baker***, 721 F.2d 647, 650 (8th Cir. 1983) ("Appellant was not held in contempt for refusing to answer questions on cross-examination, but rather for refusing to comply with a previous order of the district court enforcing an IRS summons against him.").

## IV.

Briggs says that "the record does not support the contempt finding . . . because there is no evidence that Briggs . . . made any misleading statements." The bankruptcy court did not make a "contempt finding" on this issue.  It did find that "Briggs deliberately and with deceptive intent made misleading representations to the Court regarding the true nature of his relationship with the Critique Services Business and Diltz."  It then concluded that it was "proper to sanction Briggs . . . for his making of misleading statements to the Court."  This court assumes Briggs is arguing that it was improper to sanction him because there is no evidence of misleading statements.

-10-

The bankruptcy court relied on statements Briggs made at the January 13 hearing.  Briggs tried to distance himself from Critique.  The bankruptcy court cited several examples.  Asked how he could help obtain documents and information from Critique,  Briggs said, "I have no leverage.  I have no knowledge."  Also, "Briggs even claimed he had no personal knowledge of whom he could ask at the Critique Services Business for documents."   In an exchange between Briggs and the bankruptcy court,  the bankruptcy court asked, to Briggs's knowledge, "who owns and controls" Critique.  Briggs answered:  "Mr. Robinson may well be [the owner]. It may – it may be Beverly Diltz."  The bankruptcy court asked, "What do you mean 'may be?'"  Briggs answered:  "That's what the Missouri Secretary of State says.  I assume it's correct."

The bankruptcy court found these representations misleading because "Briggs has a long history of being closely involved with the Critique Services Business." The bankruptcy court noted that Briggs has (1) been both Diltz's profit-sharing partner and her employee, (2) employed ex-Critique employees, (3) represented Critique clients at section 341 meetings, and (3) done business as "Critique Services." The bankruptcy court concluded that "Briggs deliberately misled the Court" and "deliberately lacked candor when characterizing his relationship with the Critique Services Business and Diltz."  In the bankruptcy court's view, Briggs "did whatever he could to create the façade that he was not part of the Critique Services Business. Even his physical deportment—his expressions, his blinking, his lack of eye contract—betrayed his lack of candor."

The misrepresentation issue is interrelated with a separate issue—whether the bankruptcy court denied Briggs due process by not providing an evidentiary hearing before imposing sanctions.  Briggs's due-process argument is a legal issue this court reviews de novo.  *In re Morgan*, 573 F.3d 615, 623 (8th Cir. 2009).  "[B]efore a district court may impose sanctions, the individual must receive notice that sanctions against her are being considered and an opportunity to be heard."  *Plaintiffs' Baycol*

-11-

*Steering Comm. v. Bayer Corp.*, 419 F.3d 794, 802 (8th Cir. 2005).  But "the opportunity to be heard does not necessarily entitle the subject of a motion for sanctions to an evidentiary hearing." *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 335 (2d Cir. 1999).  "An evidentiary hearing serves as a forum for finding facts; as such, its need can be obviated when there is no disputed question of fact or when sanctions are based entirely on an established record." *Id.*

On July 22, the bankruptcy court issued a show-cause order giving notice "to Briggs that it is considering imposing sanctions, issuing directives, and/or making referrals to the proper authorities to address his apparently false or misleading representations to the Court regarding his relationship with Critique Services L.L.C. and Diltz."  The order detailed the "apparently false or misleading representations" Briggs made, focusing on those made at the January 13 hearing.  Whether Briggs made false or misleading representations is a question of fact.  Briggs's July 31 response to the show-cause order argued that there was "no basis for imposing any sanction."  He noted that under the show-cause order, "one of the bases for the proposed [sanctions] is 'Briggs's claim that he cannot identify who owns Critique Services, LLC.'"  Briggs argued that he "never made such a 'claim' or representation," quoted the exchange on the Critique-ownership question, and asserted that his answer was accurate.

In the sanctions order, the bankruptcy court addressed Briggs's response: "Briggs first claimed that he has dealt honestly with the Court."  In other words, the bankruptcy court interpreted Briggs's arguments to mean that he was factually disputing the bankruptcy court's assertion in the show-cause order that Briggs made "apparently false or misleading representations."  The bankruptcy court concluded that the accuracy of Briggs's answer "is not a reason that Briggs should not be sanctioned" because "[h]e purposely mislead [sic] the Court about his personal knowledge of the fact that Diltz is the owner—in an effort to make himself look clueless and far-removed from the Critique Services business."

-12-

The bankruptcy court made this factual determination without an evidentiary hearing, despite recognizing that Briggs was disputing whether he made false or misleading representations.  The bankruptcy court erred in sanctioning Briggs for "deliberately misle[ading] the Court" because it based that conclusion on disputed questions of fact without holding an evidentiary hearing.  *See* ***Schlaifer***, 194 F.3d at 335.

But the bankruptcy court's error does not compel remand.  It had two independent bases for sanctioning Briggs:  "it is proper to sanction Briggs for his contempt of the Order Compelling Turnover *and* for his making of misleading statements to the Court."  (Emphasis added.)  This court ruled above that the bankruptcy court did not abuse its discretion in finding Briggs in contempt of the order compelling turnover.  Briggs's contempt is a sufficient basis for the sanctions. *See* ***Weisman v. Alleco, Inc.***, 925 F.2d 77, 80 (4th Cir. 1991) ("The district court based its decision to impose sanctions on several grounds. . . . We believe any one of these grounds would, standing alone, justify the imposition of Rule 11 sanctions.").

## V.

By Rule V of the district court's disciplinary-enforcement rules, a "judge may refer [a disciplinary] matter to counsel appointed under Rule X for investigation and prosecution of a formal disciplinary proceeding or the formulation of such other recommendation as may be appropriate."  **E.D.Mo. Discip. Enf't R. V**.  Briggs says that the bankruptcy court was "obliged" to follow Rule V and refer the matter to appointed counsel.  He believes that the bankruptcy court violated his due-process rights by not doing so.

Rule V is permissive.  *See* ***Robinson***, 828 F.3d at 687 n.10 ("Though Robinson and Walton attempt to rely on Rule V of the Rules of Disciplinary Enforcement, that rule simply states that a judge *may refer* disciplinary matters to counsel appointed by the district court if such a referral is warranted.").  The bankruptcy court had

-13-

discretion not to invoke Rule V.  Briggs has not shown it was "obliged" to do so.  Not invoking Rule V is not a due-process violation.  *See **id.***

VI.

Briggs appeals the district court's[3] judgment denying reinstatement of full privileges to practice before the bankruptcy court.  The bankruptcy court's sanctions order noted:  "Briggs is invited to file, on October 1, 2016 or any time thereafter, a motion for reinstatement to the privilege of practicing before the Court after October 15, 2016.  Evidence of completion of the required CLE should be attached to any such motion."  The order does not explicitly state with whom Briggs should file for reinstatement.  Briggs did not file his motion with the bankruptcy judge who imposed sanctions.

Instead, Briggs first requested reinstatement from the bankruptcy court's chief judge.[4]  He argued she had two bases to hear his motion.  First, the bankruptcy court's Local Rule 2094(A) says that an attorney who is disbarred or suspended by a court besides the bankruptcy court is automatically disbarred or suspended in the bankruptcy court for the same length of time as the discipline imposed by the other court.  Local Rule 2094(B) says that the bankruptcy court's chief judge presides over a reinstatement proceeding for an attorney disbarred or suspended under subsection A.  The chief judge ruled that Briggs "was not suspended by another court but rather was suspended by this Court.  Therefore, Local Rule 2094(B) does not apply under these circumstances."

---

[3] The Honorable Rodney W. Sippel, Chief Judge, United States District Court for the Eastern District of Missouri.

[4] The Honorable Kathy Surratt-States, Chief Judge, United States Bankruptcy Court for the Eastern District of Missouri.

-14-

Second, Briggs believed that Rule VII of the district court's disciplinary-enforcement rules "provides that this Motion for Reinstatement shall be assigned to the Chief Judge of this Court, and shall not be referred to the judge upon whose complaint the disciplinary proceeding was predicated." But Rule VII says that attorneys who are disbarred or suspended by *the district court* must file a petition for reinstatement with the *district court's chief judge*. The chief judge explained that Rule VII "does not apply in this case" because Briggs "was not suspended by the U.S. District Court for the Eastern District of Missouri, nor did he file his request for reinstatement with the Chief Judge of" that court. The chief judge denied Briggs's motion because there was no procedural "basis for the relief requested."

Briggs then sought reinstatement from the district court's chief judge, relying on Rule VII and the district court's "inherent power." That chief judge denied Briggs's motion because he "ha[d] not exhausted the proper judicial channels." Instead of seeking relief in the district court, the chief judge explained, "Briggs should seek reinstatement from Judge Rendlen directly. Judge Rendlen provided specific guidance in the sanctions order regarding the filing of a motion for reinstatement."

Neither Local Rule 2094(B) nor Rule VII provide a basis for the bankruptcy court's chief judge to hear Briggs's reinstatement motion. Rule VII does not allow the district court's chief judge to resolve that motion. Briggs abandoned his argument that the chief judge's "inherent power" lets him hear the motion because Briggs did not develop it in the district court. Briggs may file his motion with Judge Rendlen. If Judge Rendlen denies the motion, then Briggs may appeal.[5] *See* **28 U.S.C. § 158**.

---

[5] While his initial appeal was pending, Briggs moved to disqualify Judge Rendlen on remand. This court has the authority when remanding to "direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances." **28 U.S.C. § 2106**; *see also **United States v. Tucker***, 78 F.3d 1313, 1323-24 (8th Cir. 1996) (explaining that § 2106's

-15-

Case: 4:16-cv-00633-BLW    Doc #: 73    Filed: 04/25/18    Page: 16 of 20    PageID #: 477

\*\*\*\*\*\*\*

The judgments are affirmed.

_____

---

remand clause empowers this court to reassign a case when "in the language of 28 U.S.C. § 455(a), the district judge's 'impartiality might reasonably be questioned.'"). Because this court is not remanding, § 2106 is inapplicable and his motion is moot.

-16-

# United States Court of Appeals
## *For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
### St. Louis, Missouri 63102

**Michael E. Gans**
*Clerk of Court*

**VOICE (314) 244-2400**
**FAX (314) 244-2780**
**www.ca8.uscourts.gov**

April 25, 2018

Mr. Jerome Dobson
DOBSON & GOLDBERG
3rd Floor
5017 Washington Place
Saint Louis, MO  63108

Ms. Susan Nell Rowe
ROWE LAW OFFICE
2117 Nebraska Avenue
Saint Louis, MO  63104

      RE:  17-1143  Ross Briggs v. Hon. Charles Rendlen
           18-1169  In Re: Ross Briggs

Dear Counsel:

      The court has issued an opinion in these cases. Judgment has been entered in accordance with the opinion. The opinion will be released to the public at 10:00 a.m. today. Please hold the opinion in confidence until that time.

      Please review Federal Rules of Appellate Procedure and the Eighth Circuit Rules on post-submission procedure to ensure that any contemplated filing is timely and in compliance with the rules. Note particularly that petitions for rehearing and petitions for rehearing en banc <u>must</u> be received in the clerk's office within 14 days of the date of the entry of judgment. Counsel-filed petitions must be filed electronically in CM/ECF. Paper copies are not required. No grace period for mailing is allowed, and the date of the postmark is irrelevant for pro-se-filed petitions. Any petition for rehearing or petition for rehearing en banc which is not received within the 14 day period for filing permitted by FRAP 40 may be denied as untimely.

                                    Michael E. Gans
                                    Clerk of Court

JPP

Enclosure(s)

cc:    Mr. Seth A. Albin
       Mr. Michael P. Downey
       Mr. Joshua Michael Jones
       Mr. Gregory J. Linhares

District Court/Agency Case Number(s): 4:16-cv-00633-RLW
4:16-cv-00660-RLW
4:16-cv-00662-RLW
4:16-cv-00663-RLW
4:16-cv-00664-RLW
4:16-cv-00665-RLW
4:16-cv-00667-RLW
4:16-cv-00668-RLW
4:16-cv-00669-RLW
4:17-mc-00674-RWS

# United States Court of Appeals
## *For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
### St. Louis, Missouri 63102

**Michael E. Gans**
*Clerk of Court*

**VOICE (314) 244-2400**
**FAX (314) 244-2780**
**www.ca8.uscourts.gov**

April 25, 2018

West Publishing
Opinions Clerk
610 Opperman Drive
Building D D4-40
Eagan, MN 55123-0000

      RE:  17-1143  Ross Briggs v. Hon. Charles Rendlen
           18-1169  In Re: Ross Briggs

Dear Sirs:

      A published opinion was filed today in the above cases.

      In case no. 17-1143, counsel who filed the brief and  presented argument on behalf of the appellant was Jerome Dobson, of Saint Louis, MO. The following attorney(s) appeared on the appellant brief;  Susan Nell Rowe, of Saint Louis, MO.

      Counsel who presented who filed the brief and presented argument on behalf of the appellee was Joshua Michael Jones, AUSA, of Saint Louis, MO.

      In case no. 17, 1143, the judge who heard the case in the district court was Honorable Ronnie L. White. The judgment of the district court was entered on January 3, 2017.

      In case no. 18-1169, there was no briefing. The judge who heard the case in the district court was Honorable Rodney W. Sippel. The judgment of the district court was entered on December 15, 2017.

      If you have any questions concerning this case, please call this office.

                  Michael E. Gans
                  Clerk of Court

JPP

Enclosure(s)

cc:  MO Lawyers Weekly

District Court/Agency Case Number(s):  4:16-cv-00633-RLW

4:16-cv-00660-RLW
4:16-cv-00662-RLW
4:16-cv-00663-RLW
4:16-cv-00664-RLW
4:16-cv-00665-RLW
4:16-cv-00667-RLW
4:16-cv-00668-RLW
4:16-cv-00669-RLW
4:17-mc-00674-RWS